## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **YULIY BARYSHNIKOV, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 22-CV-2140** |
| | ) | |
| **ALEJANDRO MAYORKAS, in his official** | ) | |
| **capacity as Secretary of Homeland Security,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Plaintiffs filed their Amended Complaint (#18) on November 14, 2022.  Plaintiffs challenge certain sections of Presidential Proclamation 10043, which bars the issuance of F and J visas to a Chinese national "who either receives funding from or who currently is employed by, studies at, or conducts research at or on behalf of, or has been employed by, studied at, or conducted research at or on behalf of, an entity in the PRC [People's Republic of China] that implements or supports the PRC's 'military-civil fusion strategy.'"  Defendants filed their Motion to Dismiss (#22) on January 3, 2023, to which Plaintiffs filed a Response (#23) on January 17, 2023.  For the following reasons, Defendants' Motion to Dismiss (#22) is GRANTED.

BACKGROUND

The following background is taken from the allegations in Plaintiffs' Amended

Complaint.  At this stage of the proceedings, the court must accept as true all material

allegations of the Amended Complaint, drawing all reasonable inferences therefrom in

Plaintiffs' favor.  See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir.

2016).

<u>Introductory Summary</u>

Plaintiffs[1] have brought this action to challenge Defendants'[2] "continuing efforts

to ban the entry of Chinese nationals who seek to study at United States universities."

On May 29, 2020, then-U.S. President Donald J. Trump promulgated Presidential

Proclamation 10043 ("the Proclamation"), entitled "Proclamation on the Suspension of

Entry as Nonimmigrants of Certain Students and Researchers From the People's

Republic of China."  The Proclamation, in general, suspends the entry of Chinese

---

[1]Plaintiff Yuliy Baryshnikov, a lawful permanent resident of the United States, is a professor of Mathematics and Electrical and Computer Engineering at the University of Illinois Urbana-Champaign, who currently serves as the director of graduate student admissions for the University's Department of Mathematics.  The remaining Plaintiffs are all Chinese nationals who reside in the PRC and whose visa applications to study in the United States have been denied, sometimes multiple times, under the authority of the Presidential Proclamation at issue in this case.

[2]Defendants are the United States of America and representatives and departments of the federal government: President Joseph R. Biden; the Department of Homeland Security; Alejandro Mayorkas, in his official capacity as U.S. Secretary of Homeland Security; the Department of State; and Antony J. Blinken, in his official capacity as U.S. Secretary of State.

nationals who are graduate students or researchers and are currently or previously connected with entities in the PRC that "implement or support [the PRC government's] 'military-civil fusion strategy.'"

<u>President Trump's Statements Concerning the PRC</u>

Former President Trump repeatedly campaigned on the promise that, if he were elected in 2016, he would adopt an aggressive foreign policy against the PRC, promising that he would declare the PRC a currency manipulator, adopt a zero-tolerance policy on intellectual property theft and forced technology transfer, and fight the PRC's allegedly lax labor and environmental standards.  He punctuated his presidential campaign with inflammatory comments regarding the PRC, going so far as to accuse the PRC of "raping" the United States.  Prior to launching his campaign, Trump had made derogatory comments towards the PRC, accusing the country of cheating, stealing the United States' national security and corporate secrets, and wanting to "own" the United States.

U.S. Government Actions Taken Against Chinese Students Prior to the
<u>Implementation of the Proclamation</u>

In June 2018, the U.S. State Department began restricting visas for Chinese graduate students in "sensitive research fields" by shortening the duration of visas issued to a single year.  These research fields included fields such as robotics, aviation, and high-tech manufacturing.  At some point in 2018, Senior Advisor for Policy Stephen Miller proposed banning the issuance of visas to all Chinese nationals.  This policy was directly considered by President Trump.  The restriction on issuing visas was coupled

3

with aggressive investigations by the Federal Bureau of Investigation ("FBI") into

Chinese academics, resulting in the cancellation or review of visas for approximately 30

Chinese professors between 2018 and 2019.  The changes to visa policy caused extensive

delays in the processing of Chinese student visas, resulting in significant hardship for

hundreds of students and disruption of their studies.  As a direct result, Chinese

students at the University of Illinois Urbana-Champaign organized a petition

demanding that the U.S. government explain the delays associated with student visa

processing.

President Trump's Statements Regarding the PRC Prior to Issuance of
Proclamation and Thereafter

The first human cases of COVID-19 were identified in Wuhan, PRC, in December

2019.  The association between the origin of COVID-19 and the PRC led to use of

derogatory phrases such as the "Chinese flu," "China flu," and "Wuhan flu."  President

Trump embraced the term "China flu" in March 2020 despite rising xenophobia against

Asian-Americans and people of Chinese ancestry.  He persisted in using the term

"China flu" or variants such as "China virus" through the end of his term.

Presidential Proclamation 10043

President Trump issued the Proclamation on May 29, 2020, and it was entered in

the Federal Register at 85 F.R. 34353 on June 4, 2020.  The Proclamation cites "sections

212(f) and 215(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1182(f)

and 1185(a), and section 301, of title 3, United States Code" as the authority under

which it was issued.

4

The Proclamation bars the entry of any non-immigrant PRC national who seeks an F or J visa for graduate study or research and is connected with an entity that supports the PRC's "military-civil fusion strategy."  Specifically, sections 1, 2, and 6 of the Proclamation bar the issuance of F and J visas to a Chinese national "who either receives funding from or who is currently employed by, studies at, or conducts research on behalf of, or has been employed by, studied at, or conducted research on behalf of, an entity in the PRC that implements or supports the PRC's 'military-civil fusion strategy.'"  The "military-civil fusion strategy" is defined within the Proclamation as "actions by or at the behest of the PRC to acquire and divert foreign technologies, specifically critical and emerging technologies, to incorporate into and advance the PRC's military capabilities."

A press release issued by then-U.S. Secretary of State Mike Pompeo on June 1, 2020, claimed that the Proclamation "limits the People's Liberation Army's ['PLA'] ability to misuse non-immigrant student and researcher programs."  Secretary Pompeo further claimed that "the graduate students and researchers who are targeted, co-opted, and exploited by the PRC government for its military gain represent a small subset of Chinese student and researcher visa applicants coming to the United States."

The United States government has published little to no information on the criteria used to evaluate Chinese applicants for the F and J graduate visas. The relevant Foreign Affairs Manual section has redacted both the academic fields covered by the Proclamation as well as the list of entities allegedly affiliated with the PRC's "military-civil fusion strategy."

The Proclamation went into effect on June 1, 2020, and has never been rescinded.

Impact of the Proclamation

The Center for Security and Emerging Technology at Georgetown University has estimated that between 3,000 and 5,000 Chinese nationals have been and will be affected by the Proclamation every year. A separate estimate based on general data provided by U.S. consulates indicates that between 700 and 1,300 visas were denied between the implementation of the Proclamation in June 2020 and August 2021. However, this estimate does not include those potential students who did not apply for a visa due to fear of denial.

Plaintiff Baryshnikov has witnessed the emotional distress of his Chinese national students currently studying at the University, and heard several students discuss their fear of being unable to return to the United States if they travel to the PRC for any reason. The Proclamation has further constrained Baryshnikov's ability to recruit graduate students in the Department of Mathematics and has directly impacted his ability to freely associate with both students and colleagues, such as Plaintiff Dongze Li.

Plaintiffs Baryshnikov and Dongze Li have a shared research interest in the

6

organization of complex systems, such as power grids. Plaintiff Dongze Li's inability to travel, study, and work in the United States due to the denial of his visa application has prevented them from collaborating in this area.

The Chinese student Plaintiffs have also suffered individualized and particularized harm through the implementation of the Proclamation. Each Plaintiff has been admitted to at least one United States university and sought an appropriate visa to conduct their studies. Every Plaintiff has suffered a denial of a visa application or the revocation of an existing visa, requiring them to either delay their studies or seek admission elsewhere. None of the Chinese student Plaintiffs have received information from either consular officers or Defendants concerning the factual predicates for their visa denials. They have only been provided with a citation to 8 U.S.C. § 1182(f) of the INA.

Allegations in Complaint

Plaintiffs' Amended Complaint contains four causes of action.

Count I, concerning all Plaintiffs, alleges that sections 1, 2, and 6 of the Proclamation exceed the scope of the President's authority under §§ 1182(f) and 1185(a) of the INA, excluding aliens whose entry would not be "detrimental to the interests of the United States" within the meaning of those terms as informed by their text, history, and context, and by failing to adequately find that the entry of such aliens would be harmful to the United States.

Count II, concerning Plaintiff Baryshnikov, alleges violations of his freedom of speech and association under the First and Fourteenth Amendments to the U.S.

Constitution, in that Defendants' "violations inflict ongoing harm upon Plaintiff Baryshnikov by denying him the ability to associate with Chinese nationals and engage in educational activities with Chinese nationals."

Count III, concerning all Plaintiffs, alleges substantive violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(C), in that, in implementing sections 1, 2, and 6 of the Proclamation, Defendants exceeded their constitutional and statutory authority under the First and Fourteenth Amendments and the INA, engaged in nationality-based discrimination, and failed to vindicate statutory rights guaranteed by the INA. Plaintiffs allege Defendant Department of State has developed and implemented criteria to evaluate visa applications pursuant to the Proclamation, which are located within the Foreign Affairs Manual, the text of which, for a majority of the provisions, is not publicly available.

Plaintiffs further allege Defendants, in enacting sections 1, 2, and 6, acted arbitrarily and capriciously. For example, Defendants have not offered a satisfactory explanation for the PRC nationals that are and are not included within the scope of the Proclamation. Among the arbitrary acts and omissions, Plaintiffs allege Defendants have not offered publicly available criteria for determining which PRC nationals are included within the scope of the Proclamation.

8

Count IV, concerning all Plaintiffs, also alleges procedural violations of the APA, 5 U.S.C. § 706(2)(D), in that, in enacting sections 1, 2, and 6 of the Proclamation, Defendants have changed the substantive criteria by which individuals from the PRC may enter the United States, impacting the substantive rights of both Chinese and U.S. citizens.  Defendants did not follow the rulemaking procedures required by the APA in enacting and implementing the orders.

Plaintiffs seek a declaration from the court that sections 1, 2, and 6 of the Proclamation are unauthorized by and contrary to the U.S. Constitution and federal law, and ask this court to permanently enjoin Defendants from implementing or enforcing sections 1, 2, and 6 of the Proclamation.  Plaintiff Baryshnikov also seeks $1.00 in nominal damages.

ANALYSIS

Defendants argue that Plaintiffs' Amended Complaint should be dismissed with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) the Proclamation fits well within the boundaries of the statutory authority granted by § 1182(f); (2) Plaintiff Baryshnikov fails to state a claim under the First Amendment; and (3) the APA does not authorize Plaintiffs to challenge the presidential action.  Defendants further argue the court must dismiss Plaintiffs' APA claims regarding implementation of the Proclamation by the Department of State for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Secretary of State's implementation of the Proclamation is committed to agency discretion by law.

9

I.      *Whether the Proclamation Exceeds the Scope of the President's Authority Under the INA (Count I)*

Defendants first argue that Plaintiffs fail to state a claim with regard to Count I because the Proclamation is well within the authority of the President under the INA, specifically 8 U.S.C. § 1182(f).  In support, Defendants cite to the U.S. Supreme Court's decision in *Trump v. Hawaii*, 138 S.Ct. 2392 (2018), which held that § 1182(f) "grant[ed] the President sweeping authority to decide whether to suspend entry, whose entry to suspend, and for how long."  138 S.Ct. at 2413.  Plaintiffs, in response, argue that *Trump* does not apply here because the "Proclamation here clearly supplants the statutory scheme of the [INA]" by conflicting with the INA's existing visa application scheme, including the statutory provisions for dealing with individuals who may threaten the national security of the United States.

Defendants argue Count I must be dismissed for failure to state a claim.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a pleading if it fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  "Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  "[T]he complaint must contain allegations that 'state a claim to relief that is plausible on its face' or it is subject to dismissal under Rule

12(b)(6).  *Virnich*, 664 F.3d at 212, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The complaint's factual allegations must be enough to raise a right to relief above the speculative level, meaning the complaint must contain allegations plausibly suggesting, not merely consistent with, an entitlement to relief.  *Virnich*, 664 F.3d at 212.  "A claim has facial plausibility when the plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Virnich*, 664 F.3d at 212, quoting *Iqbal*, 556 U.S. at 678.

While, in reviewing a plaintiff's claim, the court must accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the court is not bound to accept legal conclusions as true, and conclusory allegations merely reciting the elements of the claim are similarly not entitled to the presumption of truth.  *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019); *Virnich*, 664 F.3d at 212.

Much of the ground in this argument was already covered by the court's Order (#13) denying Plaintiffs' request for immediate injunctive relief.  The pertinent INA section at issue, entitled "Suspension of entry or imposition of restrictions by President" states:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f).

11

As cited by Defendants, the United States Supreme Court has recognized that this statutory section "grants the President sweeping authority to decide whether to suspend entry, whose entry to suspend, and for how long." *Trump*, 138 S.Ct. at 2413. Under this section, "Presidents have repeatedly suspended entry not because the covered nationals themselves engaged in harmful acts but instead to retaliate for conduct by their governments that conflicted with U.S. foreign policy interests." *Trump*, 138 S.Ct. at 2413.

Here, President Trump and President Biden have, by the Proclamation, restricted the entry of certain Chinese national graduate students working in certain fields based on their connections to the PLA. The Proclamation was issued on the basis of protecting national security. This would fall squarely within the language contemplated by § 1182(f), granting the president "sweeping authority" to suspend or restrict the entry of "all aliens or any class of aliens" if the president finds their entry would be detrimental to the interests of the United States. Indeed, in *Trump v. Hawaii*, the Supreme Court upheld a much broader Proclamation that barred entry to foreign nationals from multiple countries without regard to their connection to those countries' military or intelligence services. 138 S.Ct. at 2399-400.

Plaintiffs argue that the Court, in *Trump*, "assumed that 1182(f) does not allow the President to expressly override the particular provisions of the INA." Plaintiffs note that the Proclamation purports to target potential sources of espionage, something already covered by the INA. Thus, Plaintiffs argue that the Proclamation "amends or

repeals" the INA by "overriding the individualized visa system crafted by Congress, by both adding additional restrictions to Congress' system and then carving out exceptions to these new restrictions."

The court finds Plaintiffs' arguments in this regard unpersuasive.  First, the court would note that Plaintiffs, in their Response at page 5, slightly misquoted the Supreme Court in *Trump v. Hawaii*.  The actual quote is "[w]e may assume that § 1182(f) does not allow the President to expressly override particular provisions of the INA."  *Trump*, 138 S.Ct. at 2411.  There is no "the" in front of "particular provisions" in the Court's opinion, which imparts a different meaning from the quote as stated by Plaintiffs. Plaintiffs' version reads more as holding that a presidential proclamation cannot override *any* particular provision of the INA, whereas the actual quote appears to limit the Court's holding to certain "particular provisions."

In any event, the court need not concern itself with whether the statute allows the president to "override" certain particular provisions of the INA, because Plaintiffs have not identified any conflict between the statute and the Proclamation that would implicitly bar the president from addressing a national security concern in the manner employed by the Proclamation.  As already stated, § 1182(f) grants the president "sweeping authority" "to impose entry restrictions *in addition* to those elsewhere enumerated in the INA."  *Trump*, 138 S.Ct. at 2408 (emphasis added).  The restrictions and exceptions laid out in the Proclamation are not even necessarily "in addition" to those in the INA, but rather could be read as being "in support of."  "By its terms,

§ 1182(f) exudes deference to the President in every clause. It entrusts to the President the decisions whether and when to suspend entry ('[w]henever [he] finds that the entry' of aliens 'would be detrimental' to the national interest); whose entry to suspend ('all aliens or any class of aliens'); for how long ('for such period as he shall deem necessary'); and on what conditions ('any restrictions he may deem to be appropriate')." *Trump*, 138 S.Ct. at 2408.

Here, the Proclamation does not override any identified substantive provision of the INA. Rather, as stated by Plaintiffs, it targets potential sources of espionage, something that is well within the powers of the president as authorized by § 1182(f). It is true that the INA, at § 1182(a)(3)(A), bars the admission of any alien who seeks to enter the United States to engage in any unlawful activity, including "to violate any law of the United States relating to espionage or sabotage or to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information." 8 U.S.C. § 1182(a)(3)(A)(i), (ii) (cleaned up). The Proclamation, clearly authorized by the authority granted the president under § 1182(f), bars entry to certain aliens on specific national security grounds, similar to those listed in § 1182(a)(3)(A).

Rather than overriding any actual provision of the INA, the Proclamation works in conjunction with it. It provides consular officers with lawful authority to deny visas based on an applicant's association with certain entities that threaten American national security as described in the Proclamation and as authorized by § 1182(a)(3)(A), essentially aiding them in carrying out their duties under the INA. It supplements the

grounds for inadmissibility already described in general terms in the INA with the more specific, PRC military-fusion complex grounds described in the Proclamation. Thus, the Proclamation supplements the INA; it does not supplant it. See *Trump*, 138 S.Ct. at 2410. If there is any conflict, the conflict is created by § 1182(f) itself, which, "[f]airly read, ... vests authority in the President to impose additional limitations on entry beyond the grounds for exclusion set forth in the INA[.]" *Trump*, 138 S.Ct. at 2412. Because the Proclamation does not contradict "another provision of the INA, the President has not exceeded his authority under § 1182(f)." *Trump*, 138 S.Ct. at 2412. Defendants' Motion is GRANTED as to Count I.

II.     *Constitutional Claims*

Defendants next argue that Plaintiff Baryshnikov fails to state a claim under the First and Fourteenth Amendments. Defendants note that the U.S. Supreme Court has never definitively held that an American citizen can bring a constitutional challenge to a presidential action to suspend the issuance of visas to, or the entry of, foreign nationals, having always rejected those challenges on the merits. Defendants further argue that, even assuming such a claim can be brought, the Supreme Court will not look behind the exercise of the government's discretion in admission and immigration cases that overlap with national security concerns so long as the executive exercises that discretion on the basis of a facially legitimate and bona fide reason. Defendants argue the reason for the Proclamation is both facially legitimate and bona fide. Even if the court were to examine the Proclamation under rational basis review, the government argues, it would

easily survive, because the Proclamation is plausibly related to the government's stated objective.  Finally, Defendants contend that any claim based on the Fourteenth Amendment must be dismissed because no such claim has been pled in the Amended Complaint, and the Fourteenth Amendment only applies to claims against the states, and Plaintiffs have only sued federal agencies and employees in their official capacities.

Plaintiffs respond that the court can review the Proclamation because the denial of the visas here burdens Baryshnikov's fundamental rights as an American citizen, and thus the government must provide a facially legitimate and bona fide reason for the denial.  Thus, because Defendants cannot demonstrate that the Proclamation specifies discrete, factual predicates that the consular officer must find to exist before denying a visa, they cannot satisfy the facially legitimate and bona fide reason test.

For the same reasons stated in the court's Order denying Plaintiffs' request for a temporary restraining order ("TRO"), Plaintiff Baryshnikov cannot state a constitutional claim.  The court does not address Defendants' arguments about judicial review[3] because, advancing Plaintiffs' constitutional claims to rational basis review, the claims cannot survive that deferential standard.  The U.S. Supreme Court decision most

---

[3] By progressing directly to rational basis review, the court makes no judgment as to the validity of the other arguments raised in Defendants' Motion at pages 10 through 13.  The court would also note that, in their briefs on the TRO, Plaintiffs argued for the application of a form of "heightened rational basis review."  Plaintiffs make no such argument in their Response to the Motion to Dismiss.  Indeed, Plaintiffs, in their Response, do not appear to make any argument about whether the Proclamation survives rational basis review, but rather only argue that judicial review is *permitted* because the Proclamation is not based on a facially legitimate and bona fide reason.  See Response (#23), at pp. 6-7.

analogous to the instant case, *Trump v. Hawaii*, clearly indicates that claims of this nature challenging presidential proclamations under § 1182(f), if they can be reviewed at all, are reviewed under the rational basis standard.  See *Ramos v. Wolf*, 975 F.3d 872, 895-96 (9th Cir. 2020), citing *Trump*, 138 S.Ct. at 2418-19.  This is due to the Supreme Court's recognition of the fundamental authority of the executive branch to manage our nation's foreign policy and national security affairs without judicial interference. *Ramos*, 975 F.3d at 895, citing *Trump*, 138 S.Ct. at 2419.

Assuming that the court may look behind the face of the Proclamation in applying rational basis review, that standard of review considers whether the visa policy is plausibly related to the government's stated objective to prevent the risk of theft of U.S. intellectual property and technology by Chinese national graduate students with ties to entities thought to be linked to the PLA.  See *Trump*, 138 S.Ct. at 2420.  As a result, the court may consider Plaintiffs' extrinsic evidence, but will uphold the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds.  See *Trump*, 138 S.Ct. at 2420.  The Proclamation satisfies rational basis so long as it is rationally related to some legitimate government interest, and will bear a strong presumption of validity.  *Foxxxy Ladyz Adult World, Inc. v. Village of Dix, Ill.*, 779 F.3d 706, 719-20 (7th Cir. 2015).  As a result, Plaintiffs bear the burden of negating "every conceivable basis which might support it."  See *Foxxxy Ladyz*, 779 F.3d at 720.  Further, under rational basis review, it is entirely irrelevant whether the conceived reason for the challenged policy actually motivated the decisionmaker,

because that choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.  See *Foxxxy Ladyz*, 779 F.3d at 720, citing *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993).

Given the deferential nature of this standard of review, "it should come as no surprise that the [Supreme] Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny."  *Trump*, 138 S.Ct. at 2420.  Courts should only do so if it "is impossible to 'discern a relationship to legitimate state interests'" or where the policy is "'inexplicable by anything but animus.'" *Trump*, 138 S.Ct. at 2420, quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996).

Here, the Proclamation is certainly premised on a legitimate purpose: protecting U.S. national security and intellectual property and technology interests.  The purpose is legitimate, falling squarely within the president's authority under § 1182(f) to act if he or she finds that the entry of certain aliens would be detrimental to the interests of the United States.  President Trump, in the Proclamation, specifically found that "students or researchers from the PRC studying or researching beyond the undergraduate level who are or have been associated with the PLA are at high risk of being exploited or co-opted by the PRC authorities and provide particular cause for concern."  The limited scope of the visa policy, targeting only those Chinese national graduate students associated with entities connected to the PLA and the "military-civil fusion strategy," bear a reasonable relation to the undoubtedly legitimate reasons behind the Proclamation.  See *Foxxxy Ladyz*, 779 F.3d at 720.

18

The deference the court affords executive policy in this area is strengthened by the fact that the Proclamation concerns national security and entry to the United States under an express grant of authority in § 1182(f).  See *Trump*, 138 S.Ct. at 2421-22 (courts cannot substitute their own assessment for the executive's predictive judgments on national security matters, all of which are delicate, complex, and involve large elements of prophecy, because, while courts do not defer to the government's reading of the First Amendment, the executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving sensitive and weighty interests of national security and foreign affairs).  As the Ninth Circuit wrote when comparing the executive order at issue in *Trump* versus an agency's decision to terminate a Congressionally created relief program, "the level of deference that courts owe to the President in his executive decision to exclude foreign nationals who have not yet entered the United States may be greater than the deference to an agency in its administration of a humanitarian relief program established by Congress for foreign nationals who have lawfully resided in the United States for some time."  *Ramos*, 975 F.3d at 896.

As noted above, Plaintiffs have made no specific argument that the Proclamation does not survive rational basis review.  To the extent Plaintiffs would argue that Trump's pre-Proclamation statements against the PRC evince an improper discriminatory purpose as the true motivation behind the Proclamation, this allegation is insufficient to render the Proclamation invalid under rational basis review, so long as

some hypothetical legitimate government interest exists to support the challenged policy. See *Foxxxy Ladyz*, 779 F.3d at 720. For the reasons detailed above, that legitimate government interest clearly exists, and the Proclamation readily satisfies rational basis review. Plaintiffs cannot state a claim under the First and Fourteenth Amendment. Defendants' Motion is GRANTED as to Count II.

III.    *APA Claims*

Plaintiffs' two APA claims concern: (1) a substantive claim challenging the issuance and implementation of Sections 1, 2, and 6 of the Proclamation (Count III); and (2) a procedural claim alleging that the Proclamation was not subject to the rulemaking procedures of the APA (Count IV).

Defendants first argue that Plaintiffs' APA claims in Counts III and IV should be dismissed because Plaintiffs cannot use the APA to challenge the issuance of the Proclamation. Defendants argue that presidential actions are not reviewable under the APA and are not subject to APA requirements. Defendants further argue that, to the extent Plaintiffs are challenging the implementation of the Proclamation by a federal agency, the claim must still fail because "this type of challenge is exactly the sort of challenge that the doctrine of consular nonreviewability bars — a challenge to the refusal of a visa application under the APA."

Plaintiffs concede that presidents are not an agency within the meaning of the APA, and consequently cannot take "agency action" under the APA. Plaintiffs also concede that consular nonreviewability may bar APA review of individual visa

20

determinations.  However, Plaintiffs argue, consular nonreviewability restricts the review of purely statutory challenges to a *consular official's* decision to issue or withhold a visa, not to a "general" policy like the one at issue in this case.

Plaintiffs' argument about a general challenge to the policy under the APA fails because, at its core, Plaintiffs are challenging their visa denials by consular officials, presumably due to their falling under the ambit of the Proclamation.  "[T]he consular nonreviewability doctrine applies 'even to suits where a plaintiff seeks to challenge a visa decision indirectly' and regardless of plaintiffs' assurances that they were not challenging individual consular decisions."  *Pak v. Biden*, 2023 WL 22077, at *11 (W.D. Wis. Jan. 3, 2023), quoting *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017), citing *Malyutin v. Rice*, 677 F.Supp.2d 43, 46 (D.D.C. 2009) (applying doctrine to theory that visa denial obstructed plaintiff's access to state court because "the doctrine also applies where a plaintiff attempts to circumvent the doctrine by claiming [that] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision"), aff'd, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *Al Makaaseb Gen. Trading Co. v. Christopher*, 1995 WL 110117, at *3 (S.D.N.Y. Mar. 13, 1995) (rejecting challenge to inclusion of visa applicant on lookout list because "such a challenge cannot be divorced from an attack of the decision itself"); *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990) (rejecting challenge of visa denial characterized as challenge to State Department's legal opinion allegedly rendered contrary to law because courts "cannot review a consular officer's decision even upon allegations that the consular officer acted

on erroneous information, that the INA did not authorize the officer's decisions, that the officer erroneously interpreted and applied the INA, or that the State Department failed to follow its own regulations."); *Tahmooresi v. Blinken*, — F.Supp.3d —, 2022 WL 4366258, at *3 (D. Mass. Sept. 21, 2022) (doctrine of consular nonreviewability precludes judicial review under the APA of claim that APA creates jurisdiction for the court to review the State Department's broader policy of applying TRIG (terrorism related inadmissibility grounds) to categorically exclude persons in the plaintiff's position from the United States); *Moreira v. Cissna*, 442 F.Supp.3d 850, 857 (E.D. Pa. 2020) (rejecting claim that denial of visa was arbitrary and capricious, and thus in violation of § 706(2)(A) of APA, because "[i]t has been repeatedly held, however, that the APA does not provide an avenue for judicial review of a consular officer's decision to deny an immigration visa.").

In their Reply (#11) in support of their request for a TRO, Plaintiffs conceded that the doctrine of consular nonreviewability barred the Chinese national Plaintiffs' substantive APA claims.  In their Reply Plaintiffs did contest the application of this doctrine with respect to Plaintiff Baryshnikov, as he is a lawful permanent resident. The Supreme Court has recognized a "narrow exception" to the general rule of consular nonreviewability, allowing for limited judicial review when a U.S. citizen's own constitutional rights[4] are assertedly burdened by a visa denial.  *Sesay v. United States*,

---

[4]This narrow exception applies to Baryshnikov, even though he is not a U.S. citizen, because he is a lawful permanent resident.  "If a consulate's decision implicates the constitutional rights of United States citizens *or lawful permanent residents*, a court may review a challenge to the application. In such circumstances, a court may review

984 F.3d 312, 315 (4th Cir. 2021), citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).

However, even to the extent that Baryshnikov could raise this claim, the court has

already found that he cannot succeed on it (see above), and thus the narrow exception

to the general rule of consular nonreviewability would not apply to Baryshnikov.  See

*Adeyemo v. Kerry*, 2013 WL 498169, at *2-3 (D. Md. Feb. 7, 2013); *Straw v. U.S. Department

of State*, 2020 WL 2490022, at *16 (D. Md. May 14, 2020); see also *Macena v. U.S.

Citizenship and Immigration Services*, 2015 WL 6738923 (D. Md. Nov. 2, 2015) ("thus,

Macena has not asserted a plausible constitutional claim that would allow for even a

limited review of the consular officer's decision[,]" and, "[a]ccordingly, to the extent

that Macena seeks review of the consular officer's determination or an order requiring

the consular officer to grant a visa to Poulard, the doctrine of consular nonreviewability

bars consideration of that claim.").  Because none of Plaintiffs' claims can survive the

doctrine of consular nonreviewability, the court must GRANT Defendants' Motion to

Dismiss with respect to Counts III and IV of the Amended Complaint.

Plaintiffs have already filed an Amended Complaint in this case.  Importantly,

Plaintiffs had the opportunity to amend their original Complaint following this court's

denial of their request for a TRO, and the Amended Complaint is nearly identical to the

original Complaint.  The court has found that Plaintiffs' claims are not legally viable

and fail as a matter of law.  Due to the president's clear authority to issue the

---

the decision solely to determine whether the consulate provided a facially legitimate
reason for its visa decision."  *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021) (emphasis
added).

Proclamation under § 1182(f) of the INA, the absence of any constitutional claim, and the applicability of the consular nonreviewability doctrine to bar any claims under the APA, the court finds that further amendment would be futile.   Therefore, Plaintiffs' Amended Complaint (#18) is dismissed with prejudice.

IT IS THEREFORE ORDERED:

(1)     Defendants' Motion to Dismiss (#22) is GRANTED.  Plaintiffs' Amended Complaint (#18) is DISMISSED with PREJUDICE.

(2)     This case is terminated.

ENTERED this 22nd day of June, 2023.


s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE